UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **J&J SPORTS PRODUCTIONS, INC.,** *as Broadcast Licensee of the September 14, 2013 The One: Floyd Mayweather, Jr. v. Saul Alvarez WBC Middleweight Championship Fight Program,* <br><br> *Plaintiff,* <br> v. <br><br> **MICHAEL PATINO,** *individually, and d/b/a Rock House Cafe & Gallery,* <br><br> *Defendant.* | § § § § § § § § § § § § § § § § | EP-16-CV-00412-DCG |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Plaintiff J&J Sports Productions, Inc.'s ("Plaintiff") "Motion for Final Default Judgment & Brief in Support" (ECF No. 9) ("Motion") filed in the above-captioned action on March 10, 2017. Plaintiff brought this lawsuit alleging that Defendant Michael Patino, individually, and d/b/a Rock House Cafe & Gallery, ("Defendant") violated the Federal Communications Act of 1934. Although Defendant was served with a summons in October 2016, to date, he has not answered Plaintiff's Complaint or otherwise appeared in this case. By its Motion, Plaintiff asks the Court to enter a default judgment against Defendant and award damages, costs, and attorneys' fees to Plaintiff. For the reasons that follow, the Court **GRANTS IN PART** Plaintiff's Motion.

## I. BACKGROUND

Plaintiff is in the business of marketing and licensing commercial exhibitions of pay-per-view closed-circuit prizefight events.[1] In Texas, it has the exclusive authority to sublicense the telecast of the September 14, 2013 *"The One": Floyd Mayweather, Jr. v. Saul Alvarez WBC Middleweight Championship Fight Program* (the "Event") at closed-circuit commercial locations such as restaurants, bars, and lounges.[2] On September 14, 2013, the transmission of the Event originated via satellite and was electronically coded or "scrambled."[3] Broadcasts of the Event could only be exhibited in a commercial establishment if the establishment had entered into a contractual relationship with Plaintiff,[4] and thereby, obtained from Plaintiff the electronic decoding equipment and the satellite coordinates necessary to receive the signal.[5]

On September 14, 2013, Defendant Michael Patino owned, operated, and supervised Rock House Café & Gallery (the "Establishment"), an El Paso, Texas commercial establishment that sells food and beverages (though not alcoholic drinks) to its patrons.[6] On that day, alleges Plaintiff, Defendant exhibited a telecast of the Event at his Establishment without Plaintiff's authorization; Defendant never contracted with Plaintiff or paid Plaintiff the requisite licensing fee.[7]

---

[1] Riley Aff., Mot., Ex. A, ¶ 4, ECF No. 9-1.

[2] Compl. ¶¶ 5–6, ECF No. 1.

[3] *Id.* ¶ 8.

[4] *Id.* ¶ 6.

[5] *Id.* ¶¶ 8–10; Riley Aff. ¶ 4.

[6] Compl. ¶ 2; Padilla Aff., Ex. A-2 (stating that it is a "BYOB" establishment), ECF No. 9-1.

[7] Compl. ¶¶ 9, 11, 13–15; Riley Aff. ¶ 9.

On September 14, 2016, Plaintiff filed the instant lawsuit against Defendant, charging him with illegally intercepting, receiving, and transmitting or publishing Plaintiff's telecast in violation of 47 U.S.C. § 605, commonly known as the Federal Communications Act of 1934.[8] *Id.* at 4. Thereafter, on October 13, 2016, Plaintiff properly served Defendant with summons, thereby causing his answer to be due on November 3, 2016.[9] To date, Defendant has not answered to Plaintiff's Complaint in accordance with Federal Rule of Civil Procedure 12[10] or otherwise appeared in this case. On March 10, 2017, Plaintiff filed its "Request for Entry of Default" (ECF No. 8), and the Clerk of the Court entered default against Defendant pursuant to Federal Rule of Civil Procedure 55(a)(1).[11] On the same day, Plaintiff filed the instant Motion.

## II. APPLICABLE LAW

### A. Legal Standard

Federal Rule of Civil Procedure 55 governs entry of default judgment. Initially, the clerk of the court must enter default against a defendant, if the defendant fails to plead or otherwise defend and the plaintiff shows that failure by affidavit or otherwise. *See* Fed. R. Civ. P. 55(a). Thereafter, the plaintiff may move the court for a default judgment. *See* Fed. R. Civ. P. 55(b); *see also N. Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) ("After defendant's default has been entered, plaintiff may apply for a judgment based on such default. This is a *default judgment*." (emphasis added)). The court may grant the motion only if there is "a

---

[8] Compl. ¶ 16; Mot. ¶ 6, ECF No. 9.

[9] Summons Returned Executed, ECF No. 5.

[10] Federal Rule of Civil Procedure 12 provides that unless a different time is prescribed by federal statute a defendant shall serve an answer within twenty-one days after being served with the summons and complaint. Fed. R. Civ. P. 12(a)(1)(A)(i).

[11] Entry of Default, ECF No. 9.

sufficient basis in the pleading for the [default] judgment." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). In addition to the complaint, the court, may consider evidence that "simply add[s] factual details [and thereby] fleshe[s] out [the plaintiff's] claim" or "serve[s] as further proof" of the plaintiff's allegations. *Wooten v. McDonald Trans. Assocs., Inc.*, 788 F.3d 490, 500 (5th Cir. 2015).

In assessing whether the complaint contains a sufficient basis for a default judgment, the court applies the standard governing the sufficiency of a complaint under Federal Rule of Civil Procedure 8. *Wooten*, 788 F.3d at 498 & n.3 ("Although most cases addressing Rule 8 arise in the context of a Rule 12(b)(6) motion to dismiss, . . . we decline to import Rule 12 standards into the default-judgment context."). Rule 8 requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Nishimatsu Constr. Co.*, 515 F.2d at 1206 ("A default judgment [must be] supported by well-pleaded allegations, assumed to be true."). "[D]etailed factual allegations" are not required, but the complaint must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although a default judgment, which is a judgment on the merits, conclusively establishes the defendant's liability, it does not establish the amount of damages. *United States ex rel. M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). The complaint's factual allegations regarding damages, even if well-pleaded, must still be proven. *See id.* Damages should not be awarded absent "a hearing or a demonstration by detailed affidavits

establishing the necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). Rule 55(b)(2)(B) "explicitly grants the district court wide latitude" on whether to hold or to "forego an evidentiary hearing" on the issue of damages. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *see also* Fed. R. Civ. P. 55(b)(2)(B). A hearing is not necessary if "the amount claimed is a liquidated sum or one capable of mathematical calculation,"—*i.e.*, "the amount is easily computable." *Freeman*, 605 F.2d at 857; *Richardson v. Salvation Army, S. Territory, USA*, 161 F.3d 7, 7, 1998 WL 723820, at *1 (5th Cir. 1998) (*per curiam*) (unpublished).

## B. The Federal Communication Act

The Federal Communications Act (the FCA or Act) prohibits any unauthorized person from "intercept[ing] any radio communication and divulg[ing] or publish[ing] the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). The Act creates a private right of action for "[a]ny person aggrieved by any violation of [47 U.S.C. § 605(a)]." *Id.* § 605(e)(3)(A). To prevail on a claim for violations of § 605(a), a plaintiff must prove that a defendant "intercepted or otherwise unlawfully appropriated" the plaintiff's communication. *DIRECTV Inc. v. Robson*, 420 F.3d 532, 537 (5th Cir. 2005). The remedies and penalties for the violations include: actual or statutory damages, at the plaintiff's election; punitive damages; and costs, including attorneys' fees. 47 U.S.C. § 605(e).

## III. DISCUSSION

By its Motion, Plaintiff requests the Court to enter a default judgment in its favor and against Defendant. Plaintiff seeks statutory compensatory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II), *see* Mot. ¶¶ 8, 14; statutory punitive damages under 47 U.S.C. § 605(e)(3)(C)(ii), *id.* ¶¶ 15, 21; and attorneys' fees and costs under 47 U.S.C. § 605(e)(3)(B)(iii),

*id.* ¶¶ 22, 23(3)–(4). Plaintiff also seeks post-judgment interest at the highest lawful rate. *Id.* ¶ 23(4). In support of its Motion, Plaintiff submitted three affidavits: (1) an affidavit by Luis Padilla, Plaintiff's auditor, who visited the Establishment on the night of the Event, *see* Padilla Aff., *supra*; (2) an affidavit by Thomas P. Riley, an attorney who was retained by Plaintiff to investigate Defendant's activities in connection with the Event, *see* Riley Aff., *supra*; and (3) an affidavit by David M. Diaz, an attorney who represents Plaintiff in this case, Diaz Aff., Mot., Ex. B, ECF No. 9-1.

As an initial matter, a "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," but not "conclusions of law." *Nishimatsu Constr. Co.*, 515 F.2d at 1206. Accordingly, in ruling on this Motion, where applicable, the Court will rely on well-pleaded facts in Plaintiff's Complaint, accepting them as admitted, and facts stated in the affidavits, accepting them as uncontroverted. *See Wooten*, *supra*, 788 F.3d at 500.

## A. Plaintiff's Request for Default Judgment

Defendant's default serves to admit that Plaintiff had the exclusive right to sub-license the Event on September 14, 2013. Compl. ¶¶ 5–6. Defendant, by his default, also admits that the Event was communicated via satellite and was electronically coded or scrambled. *Id.* ¶ 8. Likewise, Defendant admits that he intercepted and published the Event without authorization. *Id.* ¶¶ 9, 11, 13–15. As further proof, Riley declares that Defendant did not purchase the Event from Plaintiff and was not otherwise authorized to receive the Event. Riley Aff. ¶ 9. Moreover, at the time of the Event's telecast, Plaintiff's auditor visited the Establishment and observed that the Event was shown on a large projector to Defendant's patrons. Padilla Aff.

The Court finds that the Complaint "met the low threshold of content demanded by Federal Rule of Civil Procedure 8," *cf. Wooten*, 788 F.3d at 494. Accordingly, the Court

concludes that the admitted well-pleaded facts and the submitted evidence provide a sufficient basis to hold that Defendant violated § 605 of the FCA. The Court therefore grants Plaintiff's request for default judgment against Defendant.

## B. Plaintiff's Requested Damages

### 1. *Statutory Compensatory Damages*

Plaintiff seeks the maximum recoverable amount of $10,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). Mot. ¶ 8. That sub-section provides, in pertinent part, that "the party aggrieved may recover an award of statutory damages for each violation of [§ 605(a)] involved in the action in a sum of not less than $1,000 or more than $10,000, *as the court considers just.*" § 605(e)(3)(C)(i)(II) (emphasis added). Thus, the amount of damages to be awarded is within the sound discretion of the trial court, so long as the award falls within the prescribed range.

The Court begins with a baseline award computed based on the sub-licensing fee that Defendant should have paid to Plaintiff given the seating capacity of the Establishment. *See Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008) [hereinafter *Garcia I*] (computing the fee based on the number of people and employing that fee as a starting point for determining the proper amount of damages). The evidence shows that the Establishment has a maximum capacity of eighty (80) persons. *See* Aff. Padilla ("The capacity of this establishment is approximately 80 people."). Venues which seat between zero and 100 patrons must pay a licensing fee of $2,200. Mot., Ex. A-3 [hereinafter, Rate Card for the Event], ECF No. 9-1. As such, the Court finds that Plaintiff is entitled to at least $2,200 in statutory damages.

However, as our sister courts have observed, "[t]he deterrence of future violations . . . is one of the objectives of the statute, as evidenced by the minimum award of $1,000," and "[t]here would be no incentive to cease the violation if the penalty were merely the amount that should have been paid." *Entm't by J&J Inc.* v. *Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002). Consequently, courts typically increase the award based on licensing fee to "account[] for . . . any profits made from food and drink sales associated with customers who stayed and watched the fight." *Garcia I*, 546 F. Supp. 2d at 386. In this case, there is evidence that Defendant was charging $5 as cover charge; the Establishment sold food and non-alcoholic beverages; and fifty-five individuals were present at the Establishment at the time of the Event's telecast. Padilla Aff. Accordingly, the Court considers it just to award $2,750 *in total* as Plaintiff's statutory compensatory damages under § 605(e)(3)(C)(i)(II).

### 2. *Statutory Punitive Damages*

Plaintiff seeks additional $50,000 in damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). Mot. ¶¶ 15, 21. That sub-section provides, in relevant part, that if "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court *in its discretion* may increase the award of damages. . . by an amount of not more than $100,000 for each violation." 47 U.S.C. § 605(e)(3)(C)(ii) (emphasis added). Again, by its plain language, the statute gives a court discretion to enhance the damages award.

While the FCA does not define "willfully," courts have applied the definition of willfulness provided by the Supreme Court in civil contexts, under which courts inquire whether a defendant's conduct entailed a "disregard for the governing statute and an indifference for its requirements." *Entm't by J&J Inc.*, 219 F. Supp. 2d at 776–77 (quoting *Trans World Airlines,*

*Inc. v. Thurston,* 469 U.S. 111, 127 (1985)). A trial court may infer the defendant's knowledge of, and therefore disregard for, the statute, where, as here, the defendant exhibited the telecast at a commercial establishment without proper authorization. *See Kingvision Pay-Per-View, Ltd. v. Valles,* Civ. A. No. 00-CA-179-DB, 2001 WL 682205, at *3 (W.D. Tex. Mar. 30, 2001) ("While Defendants may not have been well-versed in the statutory restrictions . . . there must have been some knowledge on the part of Defendant[] that such interception could not be had for free."). Moreover, the court may infer the defendant's indifference for the statutory requirements, because of the sheer unlikelihood that a defendant could accidentally intercept or receive a scrambled cable or satellite signal. *See Garcia I,* 546 F. Supp. 2d at 385. After all, "signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Id.* (citing *Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc.,* 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999)).

Here, Plaintiff submitted affidavits that demonstrate that the following facts necessary for finding willfulness. *Cf. United Artists Corp., supra,* 605 F.2d at 857. The transmission of the Event was electronically coded or scrambled. Riley Aff. ¶ 8. The Event could only be exhibited in a commercial establishment if the establishment had obtained the electronic decoding equipment and the satellite coordinates necessary to receive the signal from Plaintiff, which has the exclusive authority to sub-license the Event in Texas. *Id.* ¶¶ 4–6; *see also id.* ¶ 9. Defendant, who was not authorized to receive the transmission of the Event, received and exhibited the telecast of the Event through some wrongful actions, such as "using an unauthorized decoder or satellite access card, obtaining cable or satellite service and illegally altering the cable or satellite service to bring the signal of the Event into the establishment, or moving an authorized decoder or satellite card from its authorized location to the commercial establishment." *Id.* ¶ 10.

Applying the above-mentioned definition of "willful" to these facts, the Court concludes that Defendant's acted willfully.

Further, Plaintiff's evidence supports that Defendant's actions were for purposes of direct or indirect commercial advantage. The evidence indicates that Defendant charged $5 per person for viewing the Event and had a sign in front of the Establishment announcing the Event and the requisite cover charge. Padilla Aff. *See Garden City Boxing Club, Inc. v. Sacks*, No. B-07-97, 2008 WL 1711478, at *2 (S.D. Tex. Apr. 10, 2008) ("The Event was rebroadcast to the bar's customers who paid a twenty dollar ($20) cover charge; therefore, this act of cable piracy was for the purpose of direct or indirect commercial advantage."); *J & J Sports Prods., Inc. v. Garcia*, No. H-08-1675, 2009 WL 2567891, at *4 (S.D. Tex. Aug. 14, 2009) [hereinafter *Garcia II*] ("Defendant openly advertised the Event on a marquee outside its establishment which serves as evidence that the Event was shown for the purpose of commercial advantage or private financial gains.").

Nevertheless, the Court finds that Plaintiff's requested damages of $50,000 are excessive. The Court is mindful that the purpose of these enhanced damages is to discourage would-be pirates, including Defendant from engaging in piracy in the future—but not to drive Defendant out of business. *See Garcia I*, 546 F. Supp. 2d at 386 ("Defendant is not a major chain, and while this violation deserves to be punished, it should not be done in a manner than imposes an insurmountable financial burden."). Accordingly, the Court awards Plaintiff an additional $1,100 in damages, finding the sum to be reasonable in light of Defendant's actions.

### 3. Attorneys' Fees, Costs, and Post-Judgment Interest

The FCA provides that the court "*shall* direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. §

605(e)(3)(B)(iii) (emphasis added). Plaintiff seeks an award of attorneys' fees in the amount of one-third of its recovery, or in the alternative, the hourly time spent for prosecution of this case through default judgment, along with fees for post-trial and appellate services. Mot. ¶ 23(3). In support, Counsel for Plaintiff, in a sworn affidavit, affirms that four (4) hours is a reasonable estimate of the amount of time spent on this case by Plaintiff's lawyers. Diaz Aff. ¶ 9. Further, Counsel avers that the rate of $250.00 per hour is reasonable given his experience and the type of litigation involved in this case. *Id.* The Court finds that $1,000 is a fair and reasonable lodestar in this case.

The Court awards Plaintiff its full costs. Fed. R. Civ. P. 54 ("Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party."). Plaintiff may file a proposed bill of costs in accordance with Local Court Rule CV-54(a). Further, the Court awards post-judgment interest, which shall be "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Such interest shall be computed and compounded as provided in 28 U.S.C. § 1961(b).

## IV. CONCLUSION

For the foregoing reasons, the Court enters the following orders:

**IT IS ORDERED** that Plaintiff J&J Sports Productions, Inc.'s "Motion for Final Default Judgment & Brief in Support" (ECF No. 9) is **GRANTED IN PART**.

**IT IS THEREFORE ORDERED** that **DEFAULT JUDGMENT** is **HEREBY ENTERED** in favor of J&J Sports Productions, Inc., and against Defendant Michael Patino,

individually, and d/b/a Rock House Cafe & Gallery. Defendant **SHALL PAY** J&J Sports Productions, Inc.:

 a. **$2,750** in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II);

 b. **$1,100** in punitive damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); and

 c. **$1,000** in reasonable attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

**In total,** the court **GRANTS** default judgment in favor of J&J Sports Productions, Inc. and against Michael Patino, individually, and d/b/a Rock House Cafe & Gallery, **in the amount of $4,850 plus costs.** Plaintiff may file a proposed bill of costs in accordance with Local Court Rule CV-54(a) within **14 days** of this Opinion and Order.

 **IT IS FURTHER ORDERED** that Michael Patino, individually, and d/b/a Rock House Cafe & Gallery, **SHALL PAY** post-judgment interest at the rate of **1.07%**, until paid in full, to be compounded annually pursuant to the provisions of 28 U.S.C. § 1961(b).

 **IT IS FINALLY ORDERED** that the District Clerk **SHALL CLOSE** this case after docketing the Final Judgment to be issued separately on this day.

 So ORDERED and SIGNED this 24th day of May 2017.

*[signature]*
DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE